UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**CASEY RANKIN**,

Debtor.

Case No. **10-62340-13**

# MEMORANDUM OF DECISION

At Butte in said District this 21st day of January, 2011.

Pending in this case is confirmation of Debtor Casey Rankin's ("Rankin") Amended Chapter 13 Plan (Docket No. 23), and objection thereto filed by Larson Lumber Company, Inc. ("Larson Lumber") (Dkt. 26). The Chapter 13 Trustee Robert G. Drummond previously filed an objection, but withdrew his objection and consented to confirmation on January 3, 2011. The Internal Revenue Service ("IRS") also withdrew its objection. Larson Lumber objects that Debtor's Plan is not proposed in good faith as required for confirmation under 11 U.S.C. § 1325(a)(3) because of the Debtor's failure to amend his Schedules timely and his omission of assets. A hearing on confirmation was held at Missoula on January 6, 2011. Rankin appeared and testified, represented by attorney Edward A. Murphy ("Murphy") of Missoula. Larson Lumber was represented by attorney James H. Cossitt ("Cossitt") of Kalispell. The Trustee appeared. No exhibits were admitted. The Court took judicial notice of Schedules, Statements of Financial Affairs ("SOFA"), and the IRS's Proof of Claim 6 filed in this case. At the conclusion of the parties' cases-in-chief the Court took the matter under advisement. After review of the record, Larson Lumber's objection is overruled and Debtor's amended Plan will be

1

confirmed for the reasons set forth below.

This Court has jurisdiction in this Chapter 13 case under 28 U.S.C. § 1334(a). Confirmation of Debtor's Plan is a core proceeding under 18 U.S.C. § 157(b)(2)(L). This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

Rankin lives at 190 Lake Okaga Road in Troy, Montana, with his girlfriend and business partner Anita Barz ("Barz"), with whom he has lived for 4 or 5 years. He testified that they share living expenses.

Rankin operates a contracting business known as Yaak River Contracting, Inc. ("YRC"), beginning as a sole proprietorship in 2007. He testified that he also had a partnership with his son which he identified as "Bilte Rite." He testified that he incorporated YRC as an S corporation in 2009 to carry on the business, and that Barz acquired 51% of YRC in 2009. He testified that Barz did not put any cash into YRC, but that she contributed machinery to the corporation.

Rankin testified that he was involved in a lawsuit against an entity identified as Chapel Cedar which was settled in August of 2010 for $5,000. He testified that he paid bills and part of his attorneys' fees with that $5,000.

Rankin filed his voluntary Chapter 13 petition in this case on September 28, 2010, because he could not pay his bills. He testified that he was laid off during the past 12 months and that his income decreased substantially. He now is employed about 20 hours per week and receives $20 per day in unemployment compensation. After requested extensions, Rankin filed his Schedules, SOFA (Dkt. 14) and Plan (Dkt. 15) on October 27, 2010.

Rankin's original Schedule B lists "None" at item 8 ("Firearms and sports, photographic and other hobby equipment"), and lists "None" at item 13 ("Stock and interests in incorporated and unincorporated businesses. Itemize."). Schedule B lists a total value of $88,385.00 in personal property, most of which consists of value in vehicles, a drift boat used in business, machinery, a skidder and road grader. Schedule C lists exemptions in property totaling $5,850.00.

Schedule D lists nine creditors with secured claims against Debtor's personal property, including the State of Montana with a judgment lien, and total secured claims in the amount of $115,028.57. The IRS filed Proof of Claim No. 6 on November 8, 2010, asserting a claim in the total amount of $17,097.53, and the attachments to Claim 6 include a federal tax lien recorded on 7/21/2009, which secures the IRS's claim. Rankin admitted that the IRS has a tax lien against his property.

Schedule F lists unsecured, nonpriority claims, including Larson Lumber as having an claim in the amount of $18,500.00, and a total of unsecured nonpriority claims in the amount of $251,468.81. Larson Lumber filed Proof of Claim 12 on January 18, 2011, in an unknown amount pending the result of lawsuits. Schedule I lists Rankin's employer as Eustary Corporation[1] and his average monthly income as $2,890.68 from employment and unemployment insurance. He testified that his income now is $20 per day from unemployment.

The original SOFA, at item 1, lists $43,071.00 in 2009 wages and $20,816.00 in 2009 income from "Yaak River Contracting Inc." The SOFA lists no gifts, no losses, and a single transfer at item 10 on August 27, 2010, of a 1998 John Deer [sic] 120 Excavator with the name

---

[1]Eustary also is listed on Schedule F with an unsecured nonpriority claim of $21,472.

3

of the transferee listed as "Unknown." At item 18 ("Nature, location and name of business") Rankin listed three businesses: Casey Rankin Guide & Outfitting ("CRGO") which began operating in 2005 to present; YRC, which is in the business of general contracting, from 2009 to present; and Bilte Rite Construction & Landscaping ("Bilte Rite"). Item 4 of the SOFA lists lawsuits against "Built Rite Construction LLC" by the "State of Montana Department of Labor & Industry Unemployment Relations Division Uninsred Employers' Fun" [sic], by Larson Lumber against Rankin and "Bilt Rite Construction and Landscaping, LLC"; and by Chapman Construction against Rankin and "Bilt Rite Constructio & Landscaping, LLC."

Cossitt asked Rankin on cross examination about the litigation involving Bilte Rite. He testified that Bilte Rite is still involved in a lawsuit, even though it is no longer in business, and that he is trading his hunting/outfitting services in exchange for the attorney's representation in the Bilte Rite litigation and other lawsuits.

The Chapter 13 Trustee and IRS, as well as Larson Lumber, filed objections to confirmation of Debtors' original Chapter 13 Plan. Larson Lumber objected that the Plan was not proposed in good faith because of Rankin's failure to list assets or to amend his Schedules. A hearing on confirmation was held on December 14, 2010, at which Murphy appeared and requested time to file an amended Plan. The Court denied confirmation, granted the Debtor time to file an amended Plan and reset confirmation for January 6, 2011.

Rankin filed his Amended Plan (Dkt. 23) on December 23, 2010. The Amended Plan proposes monthly payments in the sum of $450.00 for a term of 60 months, treatment of the IRS's impaired secured claim, and a liquidation analysis at paragraph 2(g) stating that unsecured claims will share a distribution of "at least $14,000.00, which exceeds what would be available

to pay unsecured claims if the Debtor's estate was liquidated under Chapter 7 . . . ." At paragraph 2(a) it states that Debtor's counsel has received a retainer in the sum of $1,001.00. On redirect examination Rankin testified that he paid Murphy $1,275 for the retainer and filing fee when he hired Murphy.

The Trustee and Larson Lumber again filed objections to confirmation. The Trustee added an objection that the Plan was not filed in good faith, and Larson Lumber repeated its earlier objections that the Plan is not proposed in good faith because of Debtor's failure to list assets and amend his Schedules.

On December 30, 2010, six days before the January 6, 2011, hearing, Rankin amended his Schedules B, C, SOFA, and filed his Form B22C ("Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income"). At the hearing Rankin denied that he committed "glaring" omissions on his original Schedules. He testified that he was not sure what he was supposed to disclose, and that he "only missed a few things."

At item 1 of Schedule B Rankin added a checking account of YRC in Bonners Ferry, Idaho, with a current value stated of $67.00. At item 8 he added a rifle valued at $300, all of which he claimed as exempt on Schedule C. At item 13 he added interests in Yaak River Outfitting as a sole proprietorship with a value of $0, and YRC, in which he states he owns 50% of the stock, with a value stated of $7,500. Under cross examination Rankin testified that he owns 49% of YRC, not 50%, and that Barz owns 51%, which she acquired in 2009. Cossitt asked Rankin about any value for "blue sky" in YRC, but Rankin answered that he does not understand what "blue sky" is. He testified that YRC is not part of his assets, but that he makes part of his income from YRC.

5

At item 35 of his amended Schedule B Rankin added an interest in an "unpatented mining claim" and stated "Debtor does not know the value, if it has any." The mining claim is valued at $0. Cossitt asked Rankin about the value and Rankin repeated that he does not know the value, and that he has not performed any investigation to determine its value. The total value of assets listed on amended Schedule B increased to $96,252, still mostly consisting of his vehicles, boat, skidder and road grader.

Amended Schedule C lists a $3,000 exemption claimed in the drift boat under MONT. CODE ANN. § 25-13-609(3) as an implement or tool of Debtor's trade. Schedule C lists the total value of Rankin's claimed exemptions to $5,150, and total current market value of property without deducting exemptions of $6,150. Under cross examination by Cossitt, Rankin was unable to explain or provide any information regarding the "best interest of creditors" test of 11 U.S.C. § 1325(a)(3), leaving that to his attorney.

The SOFA was amended at item 10 to list another transfer to "Unknown" in August 2010 of a John Deere excavator for $31,000. The description states "$20,000 was applied to the debt against the equipment and $11,000 to debt owed to John Deere Farm Plan." The amended SOFA makes no change at item 9 ("Payments related to debt counseling or bankruptcy"). Item 9 still says that Rankin paid Murphy Law Offices, PLLC, the sum of $274.00. Cossitt asked Rankin on cross examination why item 9 does not disclose the $1,100 retainer stated at paragraph 2(a) of his Amended Plan, and Rankin answered that he does not know.

Rankin's Form B22C (Dkt. 27) lists at line 9a $450.00 in income which it states he receives from Barz. However, under cross examination Rankin testified that he does not receive income from Barz, notwithstanding his entry on line 9a of Form B22C. He admitted that he

6

signed his Form B22C, but testified that the did not recall seeing the $450 income at line 9 and does not know how it got there. The results of Parts II, III and IV of Rankin's Form B22C are, first, that he is a below-median income debtor; and second, that the applicable commitment period for purposes of 11 U.S.C. § 1325(b)(4) is three years. The plan period in his Amended Plan (Dkt. 23) is 5 years.

Murphy questioned Rankin about several transactions listed in Larson Lumber's objection. First he asked Rankin about the sale of a L9000 Ford. Rankin responded that it was a vehicle which belonged to his son in Utah. Murphy then asked Rankin about a sale of Logs to someone named Dobson, and Rankin answered that it involved a sale of house logs by Rankin for $2,400 or $2,500. Murphy asked Rankin about the sale of a skidder, to which Rankin replied that he sold a skidder to someone in Colorado two years ago for $10,000 or $12,000. Rankin testified that he was not sure if the skidder sale occurred within the last two years. No such sale is listed on the amended SOFA at item 10.

Murphy asked Rankin about a transfer of real property to Barz. Rankin answered that he transferred two acres of real property back to Barz because he could not pay her the balance owing, and that the transfer did not take place within the last two years. Murphy asked Rankin about the transfer of a wood stove, to which Rankin answered that he still has the wood stove and in preparing to install it in his house. Cossitt asked Rankin on cross examination whether he had evaluated third party claims of the estate against Barz or others on behalf of the estate, and he replied that did not understand and had not evaluated any third party claims.

Rankin testified that he knows that, if his income increases by at least $300 per month, he must contact the Trustee and arrange to make larger payments. As a result of the Debtor's

amendments and filing Form B22C, the IRS withdrew its objection to confirmation on January 3, 2011, stating that the Amended Plan cured its objections. On January 5, 2011, the Chapter 13 Trustee filed a "Notice of Withdrawal of Objection and Consent to Confirmation of Chapter 13 Plan" (Dkt. ). The Trustee's Notice states in pertinent part that the Trustee:

> [H]as reviewed the Chapter 13 Plan dated December 23, 2010, filed by the above-named Debtor and he believes such Plan complies with the provisions of 11 U.S.C. §1301, et seq., and the other applicable provisions of the Bankruptcy Code. The Plan has been proposed in good faith and not by any means prohibited by law. The Plan represents the best efforts of the Debtor and the Debtor appears to be able to make the payments provided for in the Plan and to otherwise comply with the Plan.
>
> WHEREFORE, the undersigned consents to confirmation of the Chapter 13 Plan dated December 23, 2010, and recommends that the same be confirmed.

Thus, Larson Lumber is the only remaining objecting party.

## DISCUSSION

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met." *(Barnes v. Barnes) In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1408 (9th Cir. 1995); *Chinichian v. Campolongo*, 784 F.2d 1440, 1443-44 (9th Cir.1986) (citing *In re Elkind*, 11 B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added). Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." Therefore, the Debtor has the burden of proof on all elements of confirmation. *Meyer v. Hill, (In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001). This Court considers the Chapter 13 Trustee's consent to confirmation as having considerable weight on the side of Debtor's burden of proof favoring

8

confirmation.

**I. Best Interests of Creditors – 11 U.S.C. § 1325(a)(4).**

Larson Lumber's second objection (Dkt. 26), at paragraph 6 on page 3, objects that the value of Rankin's assets exceeds the $14,000 proposed to be distributed to unsecured claims in the liquidation analysis of his Amended Plan. At the hearing Cossitt questioned Rankin about the valuations of his personal property and exempt property, and challenged whether his Plan meets the requirements of § 1325(a)(4)[2] because the non-exempt equity in his personal property is not paid to unsecured creditors. On redirect examination Murphy elicited testimony from the Debtor that the secured claims are secured by his assets.

In a Chapter 13 case, the payments to unsecured creditors required under § 1325(a)(4) must equal or exceed the amount that the creditors would receive under chapter 7. *In re Osborne*, 76 F.3d 306, 310 (9th Cir. 1996). The best interest test of § 1325(a)(4) forbids confirmation of a plan that pays unsecured creditors less than they would receive in a Chapter 7 liquidation. *In re Cohen*, 305 B.R. 886, 896-97 (9th Cir. BAP 2004).

Larson Lumber called no witnesses in its case-in-chief, and offered no exhibits at the hearing[3] in support of its contention. Schedule C shows $1,000 in nonexempt equity in the drift

---

[2]Section 1325(a)(4) provides that a court shall confirm a plan if — "(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."

[3]Larson Lumber attached excerpts from the § 341 meeting of creditors to its second objection (Dkt. 26). Those excerpts were not offered for admission, were not admitted into evidence, and are attorney argument which is not admissible in evidence and therefore not relevant. *Hurley v. Student Loan Acquisition Auth. of Ariz., et al.*, (*In re Hurley*), 258 B.R. 15, 23 (Bankr. D. Mont. 2001) (An attorney's argument is not evidence); *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *In re Nielsen*, 211 B.R. 19, 22 n.3 (8th Cir.

boat, after deducting the claim of exemption. Larson Lumber did not itemize its objection that Rankin's unencumbered assets exceed the $14,000 listed in his liquidation analysis, so the Court must examine the Schedules.

Amended Schedule B lists a total of $80,335.00 in assets, most of the value of which lies in the vehicles, machinery and equipment, and boat. Page 2 of amended Schedule B lists a 2006 Dodge valued at $15,600; 2001 Ford pickup valued at $4,460; 2006 Interstate Cargo Trailer valued at $5,000; a 2008 6" Lucas Mil w/ 18HP Briggs and Lucas 2 Meter track extensions (PCS) and Beveled Siding Attachment valued at $0; 1992 Buick LaSabre [sic] valued at $775; 2009 Yamaha 4 wheeler valued at $4,000; drift boat valued at $4,000; 1976 John Deere Skidder valued at $18,000; and a 1986 Champion 710 Road Grader with front blade valued at $25,000.

Schedule D lists creditors with claims secured by all of the vehicles, except for the Buick valued at $775. HSBC Bank USA is listed as having an $800 claim secured by the Boflex valued at $2,000, leaving $1,200 in equity. The skidder secures a claim of Financial Pacific Leasing LLC, leaving $355 in equity. All the other claims listed on Schedule D are undersecured, leaving no equity in those vehicles, machinery and equipment which comprises the bulk of value of Debtor's assets. What value remains from amended Schedule B, after deducting exemptions and secured claims, is: $67 in the YRC account; $1,200 in the Boflex; $7,500 in YRC stock; $4,200 claim against Tax, Inc.[4]; $775 in the Buick; $355 in the skidder; $1,000 in the drift boat; $1,000

---

BAP 1997) (Neither statements of counsel nor exhibits to a brief are evidence unless expressly stipulated as admissible evidence); *Haymaker v. Green Tree Consumer Discount Co.*, 166 B.R. 601, 607 (Bankr. W.D. Pa. 1994) (Documents attached to debtors' motion do not constitute evidence and may not be considered by the court).

[4]This is only a claim for refund at item 21 of amended Schedule B, not a liquid asset.

in hand tools; $1,000 in welding and torches; $1,500 in two chain saws; and $0 value[5] in an unpatented mining claim. The total of those items is $17,597.

That number exceeds the $14,000 proposed for distribution in the liquidation analysis of the Amended Plan. However, in addition to the secured claims listed on Schedule D and claims of exemption, the evidence shows that Rankin's assets are subject to a federal tax lien. Rankin testified that the IRS has a tax lien against him, and there is no evidence to the contrary. The IRS's Claim 6 includes as an attachment a notice of federal tax lien, and Claim 6 asserts a secured claim in the amount of $7,830[6] secured by "All of debtor(s) right, title and interest to property – 26 U.S.C. § 6321." No objection has been made to Claim 6 and it is *prima facie* evidence of its validity and amount under F.R.B.P. 3001(f). The Amended Plan provides for the IRS's secured claim in the amount stated on Claim 6.

The undisputed IRS's $7,830 secured claim, when deducted from the $17,597 in unencumbered assets, reduces the available amount well below the $14,000 distribution stated in the liquidation analysis. Larson Lumber failed to offer evidence of the value of other assets and recoverable transfers listed in its objection. Based on the evidence from the testimony, Schedules and the IRS's Claim 6, and the Chapter 13 Trustee's consent, the Court finds and concludes that the Debtor's Amended Plan satisfies the best interest of creditors test of § 1325(a)(4). Larson Lumber's objection based on the best interest of creditors test will be overruled.

---

[5] Larson Lumber offered no evidence to controvert the $0 value for the mining claim, so that value is not contested by competent evidence.

[6] The total claim asserted in Claim 6 is $17,097.53.

11

**II. Good Faith**

Larson Lumber objects that Debtors' Plan is not proposed in good faith. The good faith requirement for filing a plan is found at § 1325(a)(3). In determining whether a petition or plan is filed in good faith the court must review the "totality of the circumstances". *Leavitt v. Soto ("Leavitt")*, 171 F.3d 1219, 1224-25 (9th Cir.1999). In affirming this Court's dismissal of a Chapter 13 case with prejudice, the district court in this district has adopted the *Leavitt* "totality of the circumstances" list of factors. *In re Kreilick*, 18 Mont. B.R. 419, 421-22 (D. Mont. 2000); *In re Hungerford*, 19 Mont. B.R. 103, 130 (Bankr. D. Mont. 2001). In *Leavitt*, 171 F.3d at 1224, the Ninth Circuit held that in determining whether a chapter 13 plan was proposed in good faith, a bankruptcy court should consider (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present. *See also In re Cavanagh*, 250 B.R. 107, 114 (9th Cir. BAP 2000).

Larson Lumber's good faith objection is based on the Debtor's delay in amending his Schedules and failure to list assets, sales, and transfers described in the § 341 examination attached to its objection. As noted above, Larson Lumber did not offer the § 341 transcript and it is not in evidence.

Turning to the *Leavitt* factors, no evidence exists in the record that Rankin misrepresented facts in his petition or plan, unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner. A discrepancy exists between the Amended Plan and SOFA regarding the payment to his attorney Murphy, but Rankin testified that he paid Murphy $1,275, which

reflects the $274.00 filing fee listed at item 9 on the amended SOFA and the $1,001.00 retainer stated at paragraph 2(a) of the Amended Plan. No evidence exists in the record that Rankin unfairly manipulated the Code in his Amended Plan. On the contrary, his 5-year plan term exceeds the 3-year applicable commitment period derived from his Form B22C. The first *Leavitt* factor reflects good faith.

No evidence exists in the record showing any history of filings and dismissals of prior bankruptcy cases by Rankin. The second *Leavitt* factor reflects good faith.

The third *Leavitt* factor is whether the Debtor intended to defeat state court litigation. The Schedules and SOFA show the existence of state court litigation, but no evidence exists in the record that Rankin filed this case intending to defeat state court litigation. His only testimony on this point is that certain litigation continues even though his business is no longer in operation. The third *Leavitt* factor reflects good faith, making three out of four factors in favor of a finding of good faith.

The last *Leavitt* factor is whether egregious behavior is present. Larson Lumber argues that Rankin proposed his Plan in bad faith based on his late amendment to his Schedules and failure to disclose assets. Given the Trustee's consent to confirmation, and specific statement that in his view the Amended Plan was proposed in good faith, the Court finds that Larson Lumber failed to demonstrate egregious behavior based on late amendment.

This Court found egregious behavior by the debtor *In re Chabot*, 411 B.R. 685, 703-04 (Bankr. D. Mont. 2009). The Court found egregious behavior in *Chabot* in four areas: (1) Chabot's failure to make any mortgage payments for 7 years; (2) Chabot's participation in a fraudulent investment scheme; (3) Chabot's tender of bogus promissory notes in payment of the

mortgage; and (4) Chabot's failure to file state and federal tax returns in compliance with the law. 411 B.R. at 703-04. None of the evidence in the instant case approaches the level of evidence of egregious behavior in *Chabot*. The IRS has consented to confirmation of Rankin's Amended Plan.

Larson Lumber failed to offer the § 341 transcript excerpts for admission, and therefore failed to establish the existence of undisclosed assets or avoidable transfers. What remains is the argument that Rankin failed to timely amend his Schedules. Rankin did delay in amending his Schedules, and the evidence shows that his amended Schedules added a bank account, rifle, interests in YCR and his outfitting company, and the unpatented mining claim. The amended SOFA continues to understate the amount which Rankin paid to his attorney Murphy. The Debtor's delay in amendment and inaccuracies have invited scrutiny, and form the basis for Larson Lumber's objection.

However, amendment of schedules by a debtor is liberally allowed pursuant to F.R.B.P. 1009(a) as a matter of course at any time before the case is closed. *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. 2000), (citing *Martinson v. Michael*, 17 Mont. B.R. 192, 198, 163 F.3d 526, 529 (9th Cir. 1998)); *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir. 1982); *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 256 (9th Cir. BAP 1988) (citing cases). "The bankruptcy court has no discretion to disallow amended exemptions, unless the amendment has been made in bad faith or prejudices third parties." *Arnold v. Gill*, 252 B.R. at 784. *Michael* notes: "A court may, however, deny the debtors leave to amend 'on a showing of a debtor's bad faith or of prejudice to creditors'." 17 Mont. B.R. at 198, quoting *In re Doan*, 672 F.2d 831, 833 (11th Cir. 1982) (per curiam).

"The usual ground for a finding of 'bad faith' is the debtor's attempt to hide assets. *Arnold*, 252 B.R. at 785. The party alleging the bad faith bears the burden of proof. *See Magallanes*, 96 B.R. at 256. That burden is on Larson Lumber. To evaluate whether a debtor has engaged in bad faith by attempting to hide assets, a bankruptcy court must consider the entirety of the evidence. *Arnold*, 252 B.R. at 785. The mere fact that a debtor omitted an asset from the schedules, standing alone, is insufficient to prove bad faith. *Magallanes*, 96 B.R. at 256.

The Court finds that insufficient evidence exists for establishing bad faith or prejudice to creditors resulting from Rankin's amendment to his Schedules and SOFA. Given the Trustee's consent and statement that the Amended Plan has been proposed in good faith, the 5-year plan term in excess of the applicable commitment period, the policy of liberal amendment of schedules in the Ninth Circuit, and the lack of any other evidence of egregious behavior, the Court finds and concludes that the fourth *Leavitt* factor of egregious behavior is not present based only on Debtor's delay in amendment of his Schedules to add assets, making four out of four *Leavitt* factors weighing in favor of good faith.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction in this Chapter 13 case under 28 U.S.C. § 1334(a).

2. Confirmation of Debtor's Plan is a core proceeding under 18 U.S.C. § 157(b)(2)(L).

3. Debtor satisfied his burden to show that his Amended Chapter 13 Plan satisfies the "best interest of creditors" test under 11 U.S.C. § 1325(a)(4).

4. Debtor satisfied his burden to show that he proposed his Amended Chapter 13 Plan in good faith in satisfaction of 11 U.S.C. § 1325(a)(3), and satisfied all other requirements for

confirmation under § 1325.

**IT IS ORDERED** separate Orders shall be entered overruling Larson Lumber's objection to confirmation and confirming Debtor's Amended Plan (Dkt. 23).

        BY THE COURT

        /s/ Ralph B. Kirscher
        HON. RALPH B. KIRSCHER
        U.S. Bankruptcy Judge
        United States Bankruptcy Court
        District of Montana